UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMBISHA SHOSHONE TRIBE, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 10-cv-00968-GK |
| ) | |
| v. ) | |
| ) | |
| KENNETH SALAZAR, Secretary ) | |
| of the Interior, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants moved to dismiss this suit, in which Plaintiffs, the Timbisha Shoshone Indian Tribe and various individual members of the Tribe, challenge Congress' enactment of the Western Shoshone Distribution Act and claim the Distribution Act unconstitutionally takes tribal property and violates the equal protection clause of the United States Constitution. See Defendants' Motion to Dismiss and Memorandum in Support of Motion to Dismiss (Oct. 22, 2010) (hereinafter "Defs.' Opening Br."); see also Pls.' Compl. at ¶¶ 37-44, 45-50. In Defendants' Opening Brief, the federal government argued: 1) Plaintiffs' Complaint does not set forth an applicable waiver of the United States' sovereign immunity, fails to set forth a claim against the Department of the Treasury and the Takings claim belongs in the Court of Federal Claims; 2) Plaintiffs' Takings Claim must be dismissed because none of the Plaintiffs have a vested right to the fund and thus, do not have a sufficient ownership interest for a taking of property pursuant to the Fifth Amendment; and 3) Congress has broad authority to legislatively distribute Indian judgment funds. As such, the Distribution Act does not violate the Equal Protection clause because

rational basis review applies to distributions of Indian judgment funds, and the Distribution Act rationally carries forward the legitimate governmental purposes of avoiding delay, providing payment on a historic claim, and acting in furtherance of the United States' trust relationship.

In response, Plaintiffs claim 1) sovereign immunity does not bar the claims and the District Court has jurisdiction to grant declaratory and injunctive relief in takings cases; 2) the monies are the property of the Tribe and Congress cannot take property; and 3) the Western Shoshone Distribution Act violates the equal protection amendment regardless of whether strict scrutiny or rational basis applies.  See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dec. 17, 2010) (hereinafter "Pls.' Opp.").

Nothing in Plaintiffs' Opposition changes the simple fact that Plaintiffs bear the burden of proving jurisdiction in federal district court and have failed to carry their burden.  Regardless of the statutes cited in Plaintiffs' Opposition, Plaintiffs' Complaint does not set forth an applicable waiver of sovereign immunity.  Likewise, even if the Distribution Act does violate the Constitution, Plaintiffs' remedy is a suit seeking monetary damages.  And, neither those Plaintiffs who are individual members nor the Tribe have a vested interest in the Western Shoshone Judgment Fund because interests in judgment funds do not vest until distribution of that fund.  Moreover, the Distribution Act does not violate the equal protection clause because it is rationally related to legitimate purposes.  The Court, therefore, should dismiss Plaintiffs' Complaint.

# ARGUMENT

## I. PLAINTIFFS HAVE NOT IDENTIFIED AN APPLICABLE WAIVER OF SOVEREIGN IMMUNITY OR AN APPLICABLE REMEDY.

Plaintiffs' Complaint does not contain nor cite to a waiver of the United States' sovereign immunity. See generally Pls.' Compl. Plaintiffs' Complaint cites 28 U.S.C. §§ 1331 (federal question jurisdiction), 1362 (jurisdiction for suits brought by an Indian tribe or band) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202. Id. at ¶ 2 and Compl. Relief. As discussed in Defendants' Opening Brief, none of those authorities provide Plaintiffs with a waiver of sovereign immunity and, accordingly, Defendants moved to dismiss Plaintiffs' action for failure to invoke an applicable waiver of sovereign immunity. Defs.' Opening Br. at 5-7. In response, Plaintiffs claim 1) because they are alleging the Western Shoshone Distribution Act is unconstitutional, there is no sovereign immunity that needs to be waived and 2) if a waiver is needed, then the Administrative Procedure Act ("APA") provides one. See Pls.' Opp. at 2-6.

Plaintiffs misconstrue the law regarding whether a waiver of sovereign immunity is needed for *ultra vires* actions to say that anytime a constitutional challenge is made to agency action, then no waiver is required. See Pls.' Opp. at 2-3 (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949); Dugan v. Rank, 372 U.S. 609, 620 (1963); Malone v. Bowdoin, 369 U.S. 643, 647 (1962); Clark v. Library of Cong., 750 F.2d 89, 102 (D.C. Cir. 1984); Chamber of Commerce v. Reich, 74 F.3d 1322, 1329 (D.C. Cir. 1996)). Larson and its prodigy concern ultra vires actions on the part of government officials, and as such, courts have held that when government officials act without legal authority, they are not entitled to the United States' sovereign immunity.

The situation before this Court is remarkably different. Here, Plaintiffs are challenging a properly enacted statute - the Western Shoshone Distribution Act - and the Defendants are acting pursuant to that statute. Agencies are presumed to act in accordance with the law and that their actions enjoy a presumption of regularity from the courts. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971) (rev'd on other grounds) (agency decision is entitled to a presumption of regularity); United States v. Chemical Found., 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.") (citations omitted). To show that a government agent's actions were *ultra vires*, a plaintiff must show that the conduct "was either explicitly prohibited or was outside the normal scope of the government officials' duties." Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1363 (Fed. Cir. 1998). "[G]overnment agents have the requisite authorization if they act within the general scope of their duties, i.e., if their actions are a 'natural consequence of Congressionally approved measures,' or are pursuant to the 'the good faith implementation of a Congressional Act.'" Del-Rio Drilling, 146 F.3d at 1362 (citations omitted). Plaintiffs have made no such allegations of *ultra vires* actions. Accordingly, guided by the presumption of regularity and in the absence of any such allegations of the agency acting outside the bounds of the law, the Court should presume that the Department of the Interior is acting lawfully. In other words, where, as here, Congress had provided authority and the agency is acting consistently with that statute, a plaintiff must show a waiver of sovereign immunity.

In the alternative, Plaintiffs argue the APA provided the waiver of sovereign immunity. Pls.' Opp. at 3-6. Plaintiffs' Complaint does not cite the APA. See generally Pls.' Compl.

Failures in plaintiffs' pleadings may constitute grounds for dismissal. Karst Environmental Educ. and Protection, Inc. v. E.P.A., 475 F.3d 1291, 1297-98 (D.C. Cir. 2007) ("Because Karst has failed to allege that either EPA or HUD engaged in final agency action, we shall affirm the district court's dismissal of the complaint against those two agencies."); Tulare County v. Bush, 306 F.3d 1138, 1143 (D.C. Cir. 2002) ("Although Tulare County refers to the existence of foresters on the ground, the complaint does not identify these foresters' acts with sufficient specificity to state a claim."). The failure of Plaintiffs to identify a waiver of sovereign immunity in their pleadings is alone sufficient to dismiss this action.

Moreover, Plaintiffs have another remedy available to them in the Tucker Act, 28 U.S.C. § 1491(a), which allows for an aggrieved party to bring a claim against the federal government for the taking of property and to recover money damages. Plaintiffs argue that the only remedy available is declaratory and injunctive relief because the Constitution prohibits the taking of property. Pls.' Opp. at 6, 21-29. The APA only provides a waiver for "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. But as the Supreme Court has held, the Fifth Amendment does not prohibit the taking of private property by the government; it only requires that compensation be provided in the event of a taking. Preseault v. ICC, 494 U.S. 1, 11-12 (1990) (stating that the Fifth Amendment "does not prohibit the taking of private property, but instead places a condition on the exercise of that power."). And if such a taking occurs, the Tucker Act provides the process by which a claimant can seek to recover damages. Id.

Once jurisdiction is challenged, the burden lies with the plaintiff to show jurisdiction exists. See FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990) (holding that the burden is on the

party seeking to exercise jurisdiction clearly to allege facts sufficient to establish jurisdiction); see also Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990) ("Once a defendant has challenged a federal court's jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists."). When the federal government is named as a defendant, the United States' consent to suit is a prerequisite of federal court jurisdiction. See United States v. Mitchell, 463 U.S. 206, 212 (1983); see also United States v. Nordic Village, Inc., 503 U.S. 30, 33–34 (1992). A failure to identify a waiver of sovereign immunity warrants dismissal for lack of jurisdiction pursuant to Rule 12(b)(1). See Brown v. United States, 151 F.3d 800, 803–04 (8th Cir. 1998). Here, Plaintiffs have failed to identify an applicable waiver. In short, Plaintiffs have failed to correctly plead their case.[1/] This Court should dismiss Plaintiffs' Complaint.

## II. PLAINTIFFS DO NOT HAVE A VESTED INTEREST IN THE WESTERN SHOSHONE FUND.

As discussed in Defendants' opening brief, Plaintiffs (both the individuals and the Tribe) have failed to demonstrate they have a vested interest to the monies in the fund, and as such, they cannot show the prerequisite property interest for the taking of a property interest in violation of the Fifth Amendment. See Defs.' Opening Br. at 9-13. In response, Plaintiffs claim that "the judgment fund is the property of the Western Shoshone tribes that make up the Western Shoshone Identifiable Group" because the award was to the Western Shoshone Identifiable Group. Pls.' Opp. at 15-18. Defendants agree that ICC awards were for the benefit of the common entity, meaning that, at the very least, the individual Plaintiffs' claims should be

---

[1/]   To be clear, Plaintiffs, here, cannot remedy their pleading failures by amending their Complaint to include the APA as the waiver of sovereign immunity because they do not have a vested interest in the Fund.

dismissed from this litigation.  The Plaintiff Tribe does not address how it has any vested interest to the distribution of the fund, relying instead on its claimed pre-distribution ownership interests, and ignores the fact Congress has determined who will receive the funds in the Distribution Act.  Moreover, a question remains about whether the Tribe here has any interest to the fund because there is an ongoing dispute as to who is the leadership of the tribe.  Affidavit of Joe Kennedy ¶¶ 41-42 (Dec. 30, 2010) (Dkt 21-1).

As Plaintiffs point out, Indian Claims Committee ("ICC") awards, such as the monies awarded to the Western Shoshone Identifiable Group, were for compensation on behalf of communal claims.  See Del. Tribal Bus. Comm. v. Weeks, 430 U.S. 73, 85 (1977); Fort Sill Apache Tribe v. United States, 477 F.2d 1360, 1362 (Ct. Cl. 1973); Minn. Chippewa Tribe v. United States, 315 F.2d 906, 913-914 (Ct. Cl. 1963).  As the Supreme Court explained:

> It was th[e] tribal entity, represented . . . before the Indian Claims Commission [by a representative party], that suffered from the United States' breach, and both the Commission award and the appropriation by Congress were the means of compensating that tribal entity for the wrong done to it.  Indeed, the Indian Claims Commission is not empowered to hear individuals' claims, but may only adjudicate claims held by an "Indian tribe, band, or other identifiable group." 25 U.S.C. Sections 70a, 70i

See Weeks, 430 U.S. at 85 (additional citation omitted).  Accordingly, the "individual Indians (hold) no vested rights" to the Western Shoshone Judgment Fund, "the means of compensating that tribal entity." Id. 430 U.S. at 85.  Plaintiffs admit that the individual Plaintiffs here have no rights to the fund.  See Pls.' Opp. at 17 (stating "[b]ecause Indian tribes are separate legal entities, the members or citizens of the tribe cannot own the judgment fund awarded in an Indian Claims Commission case.").  By Plaintiffs' own admission, the individuals named in the

Complaint have not established any vested property interest in the monies at issue. Thus, the Court should dismiss the individual Plaintiffs' claims on this basis alone.

Likewise, the Tribe asks this Court to ignore Congress' decision to not include the Tribe in the distribution of the fund. While ICC awards could be for the benefit of a tribe, claims under the ICC could also be brought on behalf of "identifiable" Indians without a tribe. The fund at issue here and claims were brought on behalf of the Western Shoshone Identifiable Group, i.e., descendants of the Western Shoshone tribes. As discussed in Defendants' Opening Brief, though the ICC was tasked with hearing and deciding claims, it was unequivocally left to Congress to decide the manner of appropriation, payment and distribution of any award based on those claims. See Cherokee Freedmen v. United States, 195 Ct. Cl. 39 (1971) ("Congress . . . has taken upon itself . . . this function of defining the individuals or classes who are to share in a judgment under the [Indian Claims Commission] Act."); U.S. v. Dann, 470 U.S. 39, 46 (1985) ("[T]he purpose of [the Indian Claims Commission Act] will be to dispose of all those routine claims and let the commission decide what the obligation is of this Government to the Indians; and, acting upon those findings made by the Commission, *Congress will appropriate the money*."). The circumstances of each particular identifiable group, each claim, and each judgment under the ICC vary, meaning that Congress has previously distributed judgment funds to individuals, to tribes and occasionally to both. See Defs. Opening Br. at 9-10 (citing numerous distributions of judgment funds).

Regardless of what rights a party may have before a distribution act is passed, vested interests in a judgment fund do not attach until distribution of that fund. Lebeau v. United States, 474 F.3d 1334, 1341-1343 (Fed. Cir. 2007). Plaintiffs claim that other courts have addressed

whether distribution act divests a tribe of any ownership interest it may have in a tribal trust fund. Pls.' Opp. at 19 (citing W. Shoshone Identifiable Group v. United States, No. 1:06-cv-896 (CFC Nov. 24, 2009)).  The case Plaintiffs rely on focuses on whether a tribe can bring a claim about whether the United States had properly managed and invested the funds in the Western Shoshone Judgment Fund before the upcoming distribution, given the Distribution Act.  See generally, W. Shoshone Identifiable Group.  In other words, whether beneficial owners could bring claims for breaches of trust committed before the distribution, even though Congress has decided the monies should go to individuals.  Importantly, the CFC expressly determined that "this case, [did not] require the Tribal Plaintiffs to have vested interests in the proceeds of the distribution of the Western Shoshone tribal trust funds."  W. Shoshone Identifiable Group, (Nov. 24, 2009) at 3.  In fact, the plaintiffs in that case (the Timbisha plaintiff in the CFC is represented by the amicus here) argued that distribution acts do not divest tribes or groups of beneficial ownership, and the funds remain tribal or group property until the funds are distributed.  Id. at 7.  In other words, that case does not involve a claim to the distribution of the fund, but is instead about whether the United States generated the correct amounts in the past.

**III.   PLAINTIFFS' EQUAL PROTECTION CLAIM MUST BE DISMISSED BECAUSE RATIONAL REVIEW APPLIES TO DISTRIBUTIONS OF INDIAN JUDGMENT FUNDS AND THE DISTRIBUTION ACT IS RATIONALLY RELATED TO LEGITIMATE PURPOSES.**

In its opening brief, Defendants argue that Supreme Court precedent dictates that distributions of Indian judgment funds are subject to rational basis review when challenged on equal protection grounds.  Defs.' Opening Br. at 13-19 (citing Weeks, 430 U.S. at 84).  Defendants further argued that based on the congressional record, the Distribution Act withstands such rational basis review, and thus, Plaintiffs' equal protection claim fails to legally state a

claim and should be dismissed. Id. In response, Plaintiffs claim that Defendants are arguing that Indians are not entitled to the protections of the Constitution, the classification made in the Distribution Act is racial - not political - which changes the standard to strict scrutiny and Congress had no legitimate reasons for enacting the Distribution Act. Pls.' Opp. at 29-37.

Plaintiffs argue that for rational basis to apply, the governmental interest being furthered by the legislation must be the interest the federal government has in furthering its relationship with the Tribe. Pls.' Opp. at 34-35 (citing Morton v. Mancari, 417 U.S. 535 (1974)). In Mancari, non-Indian employees challenged a Bureau of Indian Affairs ("BIA") employment preference for tribal members under the Equal Protection Clause, claiming that it impermissibly discriminated on the basis of race. The Court held the preference was not racial because it did not apply to Indians as a race, but only applied to Indians who were members of federally recognized tribes. The Court upheld the preference because it was rationally related to the government's interest in fostering Indian self-government and determination. From that holding, the Plaintiffs argue that because the Distribution Act does not distribute the judgment fund to tribal members it is a racial classification subject to strict scrutiny.

Contrary to Plaintiffs' objections, the Supreme Court has held that rational basis is the standard of review applied in reviewing distributions from ICC judgments. The Supreme Court has articulated the "general rule" that "requires the judiciary to defer to congressional determination of what is the best or most efficient use for which tribal funds should be employed." Weeks, 430 U.S. 73, 84 . The Court specifically recognized the difficulty of fairly distributing ICC awarded funds and noted this as an additional reason for deference to the Congress's judgment:

> [W]e must acknowledge that there necessarily is a large measure of arbitrariness in distributing an award for a century-old wrong. One could regard the distribution as a windfall for whichever beneficiaries are now favored. In light of the difficulty in determining appropriate standards for the selection of those who are to receive the benefits, I cannot say that the distribution directed by the Congress is unreasonable and constitutionally impermissible. Congress must have a large measure of flexibility in allocating Indian awards. . . .

Weeks, 430 U.S. at 91 (Blackmun, J., concurring). In the Western Shoshone Distribution Act, Congress sought to compensate an identifiable group of Western Shoshones. The Identifiable Group of Western Shoshones is not a tribe. It is a group of Shoshones. Congress decided the best way to compensate for the taking of the land belonging to the Western Shoshone group was to compensate descendants who possess a quarter or more Western Shoshone blood. That decision is rationally related to Congress's aim of compensating the group.

In the context of rational-basis review, "the legislature must necessarily engage in a process of line-drawing." United States Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 179 (1980). Defining the class of persons subject to a regulatory requirement--much like classifying governmental beneficiaries--"inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." Id. (internal quotation marks and citation omitted). See also Dandridge v. Williams, 397 U.S. 471, 485 (1970) (classification does not violate equal protection simply because it "is not made with mathematical nicety or because in practice it results in some inequality") (internal quotation marks omitted). Whether the legislation is a good policy choice or could be more fair is not the issue. The constitution leaves the policy choices on such matters to the Article I branch. Importantly, "[j]udicial intervention is generally unwarranted no matter

how unwisely we may think a political branch has acted." Vance v. Bradley, 440 U.S. 93, 97 (1979). Nothing in the Constitution permits the courts to second guess the wisdom of the Congressional enactment.

Moreover, Congress does not have to favor tribal interests when it legislates to further legitimate government interests and nothing in Mancari precludes enacting statutes regarding Indians for reasons other than just furtherance of the trust relationship. The D.C. Circuit directly addressed and rejected such an argument in Narragansett Indian Tribe v. National Indian Gaming Comm'n, 158 F.3d 1335 (D.C. Cir. 1998). In rejecting the premise that the only governmental interest that could be served was one that rationally furthered the interest of the tribe's, the D.C. Circuit recognized that Congress could decide that the Narragansett are not allowed to game even though other tribes are as long as the basis was rationally related to a governmental interest. Id. at 1340 ("[O]rdinary rational basis scrutiny applies to Indian classifications just as it does to other non-suspect classifications under equal protection analysis."); see also Washington v. Confed. Tribes of the Yakima Indian Nation, 439 U.S. 463, 501 (1979). The Supreme Court has made it clear that as long as the government furthers some conceivable legitimate government interest, it passes constitutional muster. For example, the Supreme Court has upheld Congress' distribution of ICC judgments for other legitimate purposes. See Weeks, 430 U.S. at 89 (congressional choice to distribute award to one of two subgroups of Indians is rationally supported by desire to avoid "undue delay, administrative difficulty, and potentially unmeritorious claims").

As discussed in Defendants' Opening Brief, the reasons Congress sought to disperse the monies to individuals found within the congressional record for the Western Shoshone

Distribution Act are rationally related to the legitimate government interest of complying with its trust obligation, distributing monies in an efficient manner, bringing finality, and avoiding delay. See Defs.' Opening Br. at 15-19. As such, in view of the deferential standard employed by the Supreme Court in ICC judgment fund distribution cases, Congress' choice to distribute the ICC award to individual Indians as opposed to the tribal government does not fail the lenient rational basis test. As a matter of law, Plaintiffs' equal protection claim should be dismissed.

## CONCLUSION

Based on the foregoing and its opening motion, Defendants respectfully request the Court grant Defendants' motion and dismiss Plaintiffs' Complaint.

Respectfully submitted this 7th day of January, 2011.

                IGNACIA S. MORENO
                Assistant Attorney General

By:    */s/ Maureen E. Rudolph*
        MAUREEN E. RUDOLPH
        U.S. Department of Justice
        Environment & Natural Resources Division
        Natural Resources Section
        P.O. Box 663
        Washington, D.C. 20044-0663
        Tel: 202-305-0479
        Fax: 202-305-0506
        Email: maureen.rudolph@usdoj.gov

OF COUNSEL:

Jane Smith

U.S. Department of the Interior

Thomas Kearns
U.S. Department of Treasury